## WAKEMAN *against* SHERMAN.

A statement by a person against whom a debt existed, but which was barred by the statute of limitations and an insolvent's discharge, that he felt in honor bound to pay the debt, and would pay it, and at the end of one year, if successful in business, he would commence paying it, is a conditional promise to pay the debt, and performance of the condition must be shown, to authorize a recovery on such promise.

Wakeman *against* Sherman.

Evidence of ability on the part of the debtor to pay, not having reference to the year's business referred to in the promise, is neither sufficient nor competent to show the condition performed.

A promise not made to the creditor, nor to any one acting in his behalf, is not sufficient to revive a debt so barred.

APPEAL from a judgment of the supreme court affirming a judgment of the superior court of New-York. (*See* 11 *Barb.*, 254.) This was an action of assumpsit, commenced February, 15, 1845, on two notes of Sherman dated December 11, 1834, for $626.31 each, payable at one and two years from date. Pleas, the general issue, the statute of limitations, and a discharge under the insolvent act. The plaintiff replied to each of the two latter pleas, a new promise on the 1st day of February, 1845. The testimony given upon the trial with regard to the new promise of the defendant will be found in the opinion of GARDINER, J.

The plaintiff offered in evidence the title of the defendant to certain real estate in the city of New-York, to show his present ability to pay. The evidence was admitted, subject to exception. The defendant moved for a nonsuit, which was refused by the judge, and the defendant excepted.

*Charles O'Conor* for the appellant.

I. There was no sufficient evidence given of any new promise. The statute of limitations was therefore a perfect bar to the action, and the motion for a nonsuit ought to have been granted. 1. The evidence of Talmadge does not prove an admission of a present liability, from which a promise to pay might be inferred; nor does it prove an admission of the original indebtedness with a clear and unequivocal promise to pay it. (1.) The admission being that he felt in honor bound, there is no foundation for the supposition that he intended to admit a present liability. The plaintiff must therefore stand or fall as he has proved or failed in proving an express promise. (2.) The express

Wakeman *against* Sherman.

promise at the most is that in case he had one more year of successful business he would begin to pay; in instalments, it is to be presumed. (3.) This was not a promise to pay when able. At most it was a promise to pay upon a special and peculiar contingency; yet there was no attempt to prove that the contingent event referred to had happened, i. e., that the defendant had had another year of successful business. (4.) This mere casual speaking to one who was not the agent of the plaintiff, nor authorized by the defendant to communicate the words to the plaintiff, does not amount to an agreement with the plaintiff or a promise to the plaintiff. (4 *Penn.*, 322, 323; *Story's Eq. Jur.*, § 1521, *a.*, 4th ed.; *Greenfell* v. *Girdlestone*, 2 *Y. & Col.*, 662; *Kyle* v. *Wells*, 17 *Penn.*, 289, 290.) 2. The words testified to by both the witnesses, taking them all into view together, or considering each set separately, fall far short of that full, direct and unequivocal promise which is necessary to take away the statutory bar. *A fortiori*, if the words proved by Talmadge should be left out of view, as suggested in the last preceding subdivision. (*Van Keuren* v. *Parmelee*, 2 *Comst.*, 526, 531; *Allen* v. *Webster*, 15 *Wend.*, 288; *Bell* v. *Morrison*, 1 *Peters*, 362; *Kensington Bank* v. *Patton*, 14 *Penn.*, 481.)

II. The evidence of the defendant's title to certain lands was improperly admitted. 1. There was no evidence whatever of a promise to pay, when able to do so; and this evidence could only have been relevant under such an aspect of the case. (*La Forge* v. *Jayne*, 9 *Penn.*, 412, 413, *and cases cited; Tompkins* v. *Browne*, 1 *Denio*, 247.) 2. The only evidence of a conditional promise is that of Talmadge. That condition was not to pay when able, but in case of another year's successful business. A prize in a lottery, a gift, devise or inheritance would not satisfy this condition. 3. The words used to Talmadge were nugatory for the reason above stated. If we are right on this point, then there was no pretence whatever for admitting this evi-

dence; and its tendency to prejudice the defendant in the minds of the jury being apparent, the judgment should be reversed for this error alone.

III. The evidence was wholly insufficient to overcome the discharge under the insolvent act.

*James T. Brady* for the respondent.

I. The motion for nonsuit was properly overruled. 1. When that motion was made, the insolvent discharge had not yet been given in evidence. It was introduced on the defence. 2. The evidence of Schenck and Talmadge proved a sufficient promise to take the case out of the statute of limitations. (*Allen* v. *Webster*, 15 *Wend.*, 284; *Stafford* v. *Richardson*, 15 *Wend.*, 302; *Kirby* v. *Champlin*, 4 *Johns.*, 461; *Bryan* v. *Wilcox*, 3 *Cow.*, 159; *Mosher* v. *Hubbard*, 13 *Johns.*, 510; *Watkins* v. *Stevens*, 4 *Barb.*, 168.) 3. It was at all events testimony on which the jury were properly required to pass. 4. The promise was clearly to pay the whole debt by instalments. . 5. The idea that Sherman merely made an offer which plaintiff did not accept, is founded on the testimony of Schenck as to an interview different from that about which Talmadge testifies; the plaintiff could not, therefore, be nonsuited on this ground unless Talmadge's testimony should be wholly disregarded; but 6. If Mr. Sherman acknowledged the debt and expressed his willingness to pay it, his liability revived and became perfect at that moment, and he had no right then to prescribe the time or terms of payment, and in agreeing to pay he did not incorporate any condition.

II. The point was not taken either on the motion for nonsuit, or in the requests to charge, that the promise made to Talmadge would not be available to Wakeman, and no exception to any ruling on that point will avail Sherman here. 1. If it had been presented, new testimony, as to that point, might have been given, or the testimony of

Mr. Talmadge might have been stricken out, and the case put entirely on that of Schenck. 2. The judge charged the jury that if the promise to Talmadge had been communicated to Wakeman, and it was Sherman's intention that it should be so communicated, it was available to plaintiff. 3. It was not suggested that there was no evidence on which to submit this question to the jury, nor was there any exception to its being submitted to them. 4. The jury must be taken to have found that the promise was made under circumstances to insure Wakeman the benefit of it, and were warranted in doing so.

III. The promise to Talmadge was available to Wakeman. 1. The consideration which supported the original liability moved from Wakeman to Sherman, and for a valid consideration the promise was made to Talmadge for Wakeman's benefit. It was therefore available to Wakeman. (*Schermerhorn* v. *Vanderheyden*, 1 *Johns.*, 139 ; *Weston* v. *Barker*, 12 *Johns.*, 276 ; *Ellwood* v. *Monk*, 5 *Wend.*, 235 ; *Barker* v. *Bucklin*, 2 *Denio*, 45 ; *Del. and Hudson C. Co.* v. *W. Co. Bk.*, 4 *Denio*, 97 ; *Doty* v. *Wilson*, 14 *Johns.*, 378 ; *Dean* v. *Hewit*, 5 *Wend.*, 257 ; *Soulden* v. *Van Rensselaer*, 9 *Wend.*, 293.)

GARDINER, J. The only question in this case is whether the evidence in support of the replication was sufficient to submit to the jury. Two witnesses were sworn in behalf of the plaintiff, Schenck and Talmadge. The testimony of the first may be laid out of the case, as the conversation which was the subject of it resulted in a proposition upon the part of the defendant to give two notes at six and twelve months (whether for the whole or a part of the demand does not appear), which was not accepted by the plaintiff. Indeed the suit was commenced in February, 1845, within a month of the time of the interview mentioned by this witness.

Talmadge testified to a conversation between him and the defendant occurring three years previous to the one between the parties above mentioned. The substance of the statement of Talmadge was, that the defendant was indebted to him and to the plaintiff, both of whom had signed off their debts under the insolvent act several years before. ' "That he called upon the defendant on his own account and not on account of the plaintiff;" that he was not authorized and did not address him in behalf of the plaintiff, nor did the defendant authorize the witness to make any statement of their conversation to Wakeman. "The defendant said the debts due Wakeman and me he intended paying, and would pay; that he wanted one year more of successful business *to begin* to pay them ; that the last year's business was worth $40,000 to him." On his cross-examination the witness testifies that " Sherman said he would do *something*.; he conveyed the idea that he felt under obligation to us, and at the end of one year, if successful, he would *commence* paying these two debts. He felt in honor bound to pay these two debts, and would pay them." Putting the construction upon this declaration most favorable to the plaintiff, it amounts at most to the acknowledgment of a debt, without stating its character or amount, due to the plaintiff, which the defendant was willing to commence paying, in whole or in part, at the end of the following year if his business continued successful. This was not an undertaking to pay when able, which, I infer from his charge, was the opinion of the learned judge at the trial, but a special promise to commence the payment, on the condition of another year's successful business. The defendant was able to pay at the time of the conversation, as he had the previous year made $40,000 according to his own admission.

But there was no evidence given or offered to show the result of the year's business succeeding this conversation. Reputation, and the deeds of some city lots, said to be

valuable, sworn to by the witness, was just as consistent with a loss of $10,000 in 1845, as the contrary. The plaintiff, therefore, should have been nonsuited for a failure to prove a fulfilment of the condition upon which the promise by the defendant (if any was made) was contingent.

But in the second place the promise was not made to the plaintiff or his agent, but to a stranger who was not authorized by the defendant to communicate with the plaintiff in any manner on his account. The result of the arrangement between Talmadge and the defendant as to his own debt, was that the latter gave, and the former accepted, a note of $75 for a debt of $94 and upwards. Now, from a conversation to which the parties to it have given this practical construction as to one creditor, the jury were allowed to infer an unconditional promise to pay the plaintiff his entire debt, principal and interest, thus placing him upon a better footing than Talmadge, when it is obvious that the defendant intended no such distinction. The result shows the danger of allowing vague declarations, casually uttered to a stranger, to be made the foundation of a new promise, when it is certain that the defendant knew that the person with whom he was communicating could neither make nor accept of any proposition in behalf of the absent creditor. I had occasion the last term, in the case of *Bloodgood* v. *Bruen* (4 *Seld.*, 362), to consider this question, and then came to the conclusion that an acknowledgment under such circumstances would not avoid the bar of the statute of limitations. It is unnecessary to repeat what was then said as to the English doctrine upon this subject, and the reasons upon which it is founded. The rule with us, as I am inclined to think, is, that to revive a demand thus barred, there must be an express promise to pay, either absolute or conditional, or an acknowledgment of the debt as subsisting, made under such circumstances that such a promise may be fairly implied. (1 *Peters*, 362; 1 *Cow.*, 531.) The promise must be made to the creditor or some one acting for him, or

if made to a third person must be calculated and intended to influence the action of the creditor. (2 *Story's Eq.*, § 1521, *a.*)

In the present case there was neither a promise or acknowledgment made to the plaintiff by the defendant, nor a proposition submitted through a third person for his consideration and acceptance. On the contrary, the witness Talmadge expressly disclaimed all authority to act either for the creditor or the debtor.

I think for this reason also, that the judgment of the supreme court should be reversed and a new trial ordered, with costs to abide the event.

MASON, J. Whatever opinion may be entertained in regard to the other questions in this case, I think it is very clear that the court below erred in allowing the plaintiff to give in evidence the defendant's title to certain real estate. The plaintiff did not prove any promise of the defendant to pay when able to do so, and this evidence could only have been relevant under such a state of the case. (*Tompkins* v. *Gardner & Brown*, 1 *Denio*, 247; 9 *Barr, Penn. R.*, 412, 413; 11 *Wheat.*, 309; 6 *B. & C.*, 603.) The only evidence of a conditional promise is that of Talmadge, and the condition was not ability to pay, but another year's successful business. The defendant might receive a fortune by gift or inheritance and not be liable upon such a promise. There is no principle upon which this evidence was admissible, and as it was calculated in its tendency to prejudice the defendant in the minds of the jury, or at least to influence their deliberations, the verdict should not be permitted to stand. (6 *Hill*, 296; *see also note* "*b*," *and cases.*) The plaintiff utterly failed to show the fulfilment of the condition upon which this promise was made, and the law is well settled that he was not entitled to recover without it. (*Scouton* v. *Eislord*, 7 *Johns.*, 36; *Bush* v. *Barnard*, 8 *Johns.*, 407; *Wait* v. *Morris*, 6 *Wend.*, 394.) I do not think that, taking

the whole of the plaintiff's evidence, it showed such an admission of a debt due and a willingness to pay as took the case out of the operation of the statute of limitations. (4 *Barb.*, 174; 6 *id.*, 586; 9 *Wend.*, 297; 1 *Hill*, 537; 11 *Wheat.*, 216; 2 *Comst.*, 531; 15 *Wend.*, 284; 1 *Peters*, 362.)

The judgment of the court below should should be reversed and a new trial granted.

DENIO, J., did not hear the argument.

All the other judges concurring,

Judgment reversed and new trial ordered.